## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| AMBULATORY INFUSION THERAPY<br>SPECIALISTS, INC., | § <br> § <br> § |
| Plaintiff, | § <br> § |
| VS. | §   CIVIL ACTION NO. H-05-4389 <br> § |
| AETNA LIFE INSURANCE COMPANY<br>and PRUDENTIAL INSURANCE CO., | § <br> § <br> § |
| Defendants. | § |

## MEMORANDUM AND ORDER

Ambulatory Infusion Therapy Specialists, Inc. ("AITS"), a health-care provider, sued

Aetna Life Insurance Company and Prudential Insurance Company of America in Texas state

court to recover amounts invoiced for medical services provided to an insured patient.  The

patient, N.D., worked for The Kroger Company, which funded an employee health insurance

plan initially administered by Prudential and later administered by Aetna.

Beginning in late 2000, AITS provided medical services to N.D. and submitted the

claims to Aetna for payment.  Aetna paid $98,490.83 of the $114,694.50 invoiced, but denied

payment of $14,153.67 on the grounds that the charges were duplicative or exceeded the

reasonable and customary fees for such services.  AITS sued the defendants in state court,

asserting state-law claims for breach of contract, negligent misrepresentation, and promissory

estoppel.  (Docket Entry No. 9, Ex. 1, ¶¶ V–VII).  The defendants removed on the grounds

that AITS's claims are completely preempted by ERISA and that this court has diversity

jurisdiction.  (Docket Entry No. 1).  AITS has filed a motion to remand, (Docket Entry No. 9), to which the defendants have responded, (Docket Entry No. 10).  After reviewing the motion and response, the pleadings, the record, and the applicable law, this court denies the motion to remand.  The reasons for this decision are explained below.

## I.    Background

N.D. worked for The Kroger Company and received health insurance coverage through Kroger's employer-funded insurance plan.  In late 2000 through the first half of 2001, N.D. received medical services from AITS.  N.D. assigned the plan benefits for the medical services to AITS.  (Docket Entry No. 10, Ex. 1-C).  AITS billed Prudential, Kroger's plan administrator at the time, for medical services given to N.D. from October 10, 2000 through January 11, 2001.  Prudential refused to pay some of the amount billed.

Kroger's self-funded employee welfare benefit plan provided employee welfare benefits, including medical benefits, to eligible employees and their eligible dependents. (Docket Entry No. 10, Ex. 1, ¶ 5).[1]  Kroger initially hired Prudential to administer its health care plan.  (*Id.* at ¶ 4).  In 1999, Aetna acquired part of Prudential's health care business and Prudential assigned Aetna its rights and responsibilities under the agreement with Kroger, the "ASO Agreement."  (*Id.* at ¶ 6 & Ex. 1-A).  Aetna provided claim administration services to the Kroger Plan from 1999 until January 1, 2002, when the ASO Agreement expired.  The ASO Agreement stated that "with respect to Section 503 of the Employee Retirement Income

---

[1] There is no dispute that the Kroger Plan is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1001 *et seq.*

Security Act of 1974, [Aetna] will be the 'appropriate named fiduciary' of the Plan for purposes of denial and/or review of denied claims under the Plan." (Docket Entry No. 10, Ex. 1-A, § IV.C). The ASO Agreement also required Aetna to "accept for processing and payment or denial those claims for benefits under the Plan for which proof of claim is furnished," to "determine, in accordance with the provisions of the Plan, the amount of benefits, if any, payable for each claim received," and to "determine a person's eligibility for coverage under the Plan." (*Id.* at §§ I.B.1, I.B.D.1).

The defendants have submitted a copy of the Plan summary. (Docket Entry No. 10, Ex. 1-B). The Plan summary includes a description of coverage for Plan participants. The Plan states that "Eligible Charges do not include charges for services or supplies that are not needed or not appropriately provided." (*Id.* at 31). The Plan summary also includes a list of "Generally Excluded Charges." (*Id.* at 40–45). Among the list of excluded charges is any "Charge Above the Usual Charge" or "Charge Above the Prevailing Charge." (*Id.* at 42). A "Charge Above the Usual Charge" is defined as "[a] charge for a service or supply to the extent that it is above the usual charge made by the provider for the service or supply when there is no coverage." (*Id.*). The summary defines "Charge Above the Prevailing Charge" as "[a] charge for a service or supply to the extent that it is above the prevailing charge in the area for a like service or supply. A charge is above the prevailing charge to the extent that it is above the range of charges generally made in the area for a like service or supply. The area and that range are as determined by [Aetna]." (*Id.*).

On June 22, 2005, Aetna sent N.D.'s counsel a letter explaining why certain charges

3

had been denied.  (Docket Entry No. 10, Ex. 1-D).  The letter explained that the total denied amount was $14,153.67.  (*Id.* at 050629433077.005).   Attached to the letter was a spreadsheet listing eleven entries for medical services, the date of service, billed amount, paid amount, date processed, denied amount, denied reason, and the applicable copayment or deductible for each service.  (*Id.* at 050629433077.009).  The spreadsheet provided the specific amounts (totaling $14,153.67) for which Aetna had denied payment.  As to three of the charges, the "denied reason" was "duplicate charge."  The other three charges, the bulk of the $14,153.67, listed "over reasonable and customary fees" as the "denied reason."  (*Id.*).

AITS sued Aetna and Prudential in Texas state court to recover the unpaid part of the billed amounts and attorney's fees.  AITS alleged that the defendants "made an independent promise to pay [AITS] for the services rendered to Defendants' insured and became bound to pay [AITS] for those designated services, which were reasonable and customary for such services.  Further, in reliance on Defendants' representations, [AITS] provided treatment to Defendants' insured to the detriment of [AITS].  Defendants have refused to pay for said services."  (Docket Entry No. 9, Ex. 1, ¶ 4).  AITS contends that it has standing to sue for breach of contract because "it is in privity with Defendants in a Contract entered into for payment of medical services provided to Defendant's insured.  This contract arises, not as a result of an insurance contract between Defendants and their insured, but as a result of Defendants' independent promise to [AITS] for payment for medical services provided to Defendants' insured."  (*Id.* at ¶ 5).  AITS asserts an alternative promissory estoppel claim for recovery of the billed costs, alleging that "Defendants made a promise to pay Plaintiff for

4

services provided to Defendants' insured." (*Id.* at ¶ 6).  AITS also alleges negligent misrepresentation, claiming that "Defendants represented that their insured was covered by their insurance policy and that the Defendants would pay for the services provided to their insured by Plaintiff.  This was an untrue statement of fact, as Defendants have since refused to pay for the services rendered to their insured." (*Id.* at ¶ 7).

The defendants removed to this court on preemption and diversity jurisdiction grounds.  AITS has filed a motion to remand.

## II.    ERISA Preemption

A civil action filed in state court is removable to federal court if the claim is one "arising under" federal law.  28 U.S.C. §§ 1331, 1441(a).  Under the "well-pleaded complaint" rule, the plaintiff is generally entitled to remain in state court if the complaint does not affirmatively allege a federal claim.  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6  (2003).  An exception to the well-pleaded complaint rule allows removal if the case "falls within the narrow class of cases to which the doctrine of 'complete preemption' applies."  *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 398 (2004), *cert. denied*, 126 S. Ct. 336 (2005) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)).  "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character."  *Id*.  "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."  *Anderson*, 539 U.S. at 8.

5

Section 514(a) of ERISA expressly preempts all state laws "insofar as they may now or hereafter relate to any employee benefit plan."  Section 502(a) of ERISA, the statute's civil-enforcement provision, provides that a "civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan. . . ."  29 U.S.C. § 1132(a).  This provision has "such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' "  *Pascack Valley Hosp.*, 388 F.3d at 399–400 (quoting *Davila*, 542 U.S. at 209).  State-law actions within the scope of § 502(a) are recharacterized as federal claims and are removable to federal court.  *Pascack Valley Hosp.*, 388 F.3d at 399–400 (citations omitted); *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.").  The recharacterization of a plaintiff's state-law claims provides a basis for federal removal jurisdiction.  *Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 499 (5th Cir. 1999).

The fact that a given federal law might "apply" or provide a federal defense to a state-law cause of action is insufficient to establish federal question removal jurisdiction. Complete preemption is required.  *See Franchise Tax Bd.*, 463 U.S. at 23–24.  "In complete preemption a federal court finds that Congress desired to control the adjudication of the federal cause of action to such an extent that it did not just provide a federal defense to the application of state law; rather, it replaced the state law with federal law and made it clear

6

that the defendant has the ability to seek adjudication of the federal claim in a federal forum."
14B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3722.1 (3d ed.
1998).   To establish federal question jurisdiction through the invocation of a federal
preemption defense, the defendant must demonstrate that Congress intended not just to
"preempt a state law to some degree," but to altogether substitute "a federal cause of action
for a state cause of action."  *Schmeling v. NORDAM*, 97 F.3d 1336, 1341 (10th Cir. 1996).

## III.   *Davila* **and Subsequent Case Law on ERISA Preemption**

The Supreme Court's most recent analysis of ERISA preemption, *Aetna Health Inc.
v. Davila*, 542 U.S. 200 (2004), involved consolidated cases in which a participant and a
beneficiary sued their  HMOs for alleged failures to exercise ordinary care in the handling
of coverage decisions, allegedly violating the Texas Health Care Liability Act (THCLA).
Davila's claim arose out of his HMO's refusal to pay for Vioxx after it was prescribed by his
treating physician.  *Id.* at 204–05.  Calad's claim arose from her HMO's refusal to pay for
an extended hospital stay despite her physician's recommendation that she remain
hospitalized after surgery.  *Id.* at 205.  The Supreme Court was asked to decide whether
ERISA's civil enforcement provision completely preempted these state-law claims.

The Court stated:

> If a participant or beneficiary believes that benefits promised to
> him under the terms of the plan are not provided, he can bring
> suit seeking provision of those benefits.  A participant or
> beneficiary can also bring suit generically to "enforce his rights"
> under the plan, or to clarify any of his rights to future benefits.
> Any dispute over the precise terms of the plan is resolved by a
> court under a de novo review standard, unless the terms of the

7

> plan "giv[e] the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."
>
> It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls within the scope of ERISA § 502(a)(1)(B). . . . In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Davila*, 542 U.S. at 210 (internal quotation and citation omitted). Applying this standard, the Supreme Court concluded that both plaintiffs' claims involved the denial of coverage allegedly promised under their respective ERISA-regulated benefit plans. The Court held that these state-law claims were completely preempted by § 502(a)(1)(B) of ERISA. "Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim." *Id*. at 216. The Court concluded that the claims were preempted despite the fact that they were state-law tort claims, based on an external state statutory duty, and did not duplicate ERISA remedies. *Id*. The *Davila* Court's test for preemption asks whether: (1) the plaintiff, at some point in time, could have brought its claim under ERISA § 502(a)(1)(B); and (2) there is any legal duty independent of ERISA or

the plan terms implicated by the defendant's actions.  *Id.* at 210.

Following *Davila*, several courts of appeals have analyzed preemption of claims not only by plan participants or beneficiaries, but also by third-party health-care providers.  In *Cleghorn v. Blue Shield of California*, 408 F.3d 1222 (9th Cir. 2005), the court considered a plan participant's claims arising out of his ERISA insurer's refusal to reimburse him for emergency medical care.  The insurer based its denial on plan terms that required physician preauthorization for emergency care.  The plaintiff alleged that the preauthorization requirement violated California state statutes.  The appellate court affirmed the district court's preemption finding, emphasizing that "[t]he only factual basis for the relief pleaded in [the] complaint is the refusal of Blue Shield to reimburse [plaintiff] for the emergency medical care he received.  Any duty or liability that Blue Shield had to reimburse him 'would exist here only because of [Blue Shield's] administration of ERISA-regulated benefits plan. . . . [Plaintiff's] claim therefore cannot be regarded as independent of ERISA."  408 F.3d at 1226.

The Third Circuit examined a claim of § 502(a) preemption in *Pascack Valley Hospital, Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir. 2004).  The plaintiff in that case was a hospital that had agreed to accept discounted payment for medical services provided to subscribing health plans' participants and beneficiaries.  The hospitals, including the plaintiff, did not contract directly with the plans, but instead entered into individual contracts with a preferred provider organization, which in turn entered into agreements with the various plans.  The agreements in *Pascack* provided that the ERISA-

regulated plans had to remit payment to the hospital for "covered services" rendered to "eligible persons" within a certain period or the discounted rate for those services would be forfeited. 388 F.3d at 396.

The underlying dispute in *Pascack* arose from medical services provided to two individuals who were eligible for coverage under the defendant ERISA plan. The treating hospital submitted claims for payment for those services. The defendant plan paid based on the discounted rate. The hospital sued the plan for alleged breach of the managed-care agreement on the theory that the plan's payments had been made after the limited time period allowed and had been improperly discounted. The plan removed the suit to federal court and the hospital moved to remand. The court of appeals considered whether the hospital's claims were completely preempted by § 502 of ERISA, making removal proper.

The Third Circuit began its analysis with the *Davila* test. The case was removable "only if (1) the Hospital could have brought its breach of contract claim under § 502(a), and (2) no other legal duty support[ed] the Hospital's claim." *Pascack Valley Hosp.*, 388 F.3d at 400. The court first concluded that the hospital, being neither a "participant" nor a "beneficiary" under the plan, could not have brought its claims under ERISA.[2] The court determined that the hospital's state-law claims were predicated on a legal duty independent

---

[2] The court declined to resolve whether, as a matter of law, the hospital could have obtained § 502(a) standing by virtue of an assignment from the participant or beneficiary because there was no evidence indicating that, in fact, such an assignment had occurred. *Id.* at 400–01. The court noted, however, that "[a]lmost every circuit to have considered the question has held that a health care provider can assert a claim under § 502(a) where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan." 388 F.3d at 401 n.7 (citing *Tango Transport v. Healthcare Fin. Servs.*, 322 F.3d 888, 891 (5th Cir. 2003) (collecting cases)).

of ERISA: Although the hospital's claims derived from an ERISA plan and existed only because of that plan, the crux of the dispute was the meaning of § 2.1 of the Subscriber Agreement, which governed the rates of payment for "Covered Services furnished to Eligible Persons." *Id.* at 402 (citing and quoting *Davila*, *supra*, *Pascack Valley Hosp.*, *supra*, and the record).   The court noted that if the parties had disputed coverage and eligibility, "interpretation of the Plan might form an 'essential part' of the Hospital's claims."   *Id.* at 402.   The record did not support that view of the dispute, leading the court to conclude that resolution of the lawsuit would require interpretation of the managed-care contract, not the ERISA Plan.   "The Hospital's right to recovery, if it exists, depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself."   388 F.3d at 402.

The *Pascack Valley Hospital* court found instructive the decision of the Ninth Circuit Court of Appeals in *Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.*, 187 F.3d 1045 (9th Cir. 1999).   In that case, the court held that claims asserted by health care providers against a health care plan for breach of their provider agreements were not completely preempted under ERISA.   *Id.* at 1047.   The court reached this conclusion even though the medical providers had obtained assignments of benefits from beneficiaries of the ERISA-covered health care plans.   *Id.* at 1052.

The litigation in *Anesthesia Care Associates Medical Group* arose from a fee dispute between four health care providers and Blue Cross, which had entered into "provider agreements" with physicians.   Under those agreements, Blue Cross agreed to identify the

11

providers in the information it distributed to beneficiaries of the plan and to direct beneficiaries to those providers.   In return, the providers agreed to accept payment for services rendered to beneficiaries according to specified fee schedules.   When Blue Cross attempted to change the fee schedules, the providers filed a class action in state court alleging a breach of the provider agreements.  *Id*. at 1049.  The Ninth Circuit held that "the Providers' claims, which arise from the terms of their provider agreements and could not be asserted by their patient-assignors, are not claims for benefits under the terms of ERISA plans, and hence do not fall within § 502(a)(1)(B)."  *Id*. at 1050.

In *Land v. Cigna Healthcare of Florida*, 381 F.3d 1284 (11th Cir. 2004), the Eleventh Circuit considered a case remanded for reconsideration in light of *Davila*.  *Land* involved a plan participant's suit against his ERISA plan administrator, alleging negligence in the care and treatment of an illness.  The circuit had initially remanded to state court, finding that under *Pegram v. Herdrich*, 530 U.S. 211 (2000), the plan's refusal to authorize inpatient treatment and instead to cover only outpatient treatment was a "mixed" eligibility and treatment decision.  The circuit court also found remand supported on the basis that the plaintiff asserted a tort claim based on the duty of care rather than a contract claim to recover plan benefits.  On remand from the Supreme Court, the Eleventh Circuit held that ERISA § 502(a)(1)(B) completely preempted the state-law causes of action, making the lawsuit removable to federal court.  The court found this result compelled by *Davila*'s holding that "the duties imposed by state law regarding the handling of coverage decisions did not arise independently of ERISA or the terms of the plans in question."  381 F.3d at 1274.

12

This court applies the applicable law to determine whether AITS's state-law claims for payment as a third-party provider are properly characterized as completely preempted claims for benefits under the Kroger ERISA Plan.

## IV.   Analysis

### A.   The Role of the Assignment

The first question under the *Davila* complete preemption test is whether AITS is asserting a claim that it could have brought under ERISA § 502(a)(1)(B). *Davila*, 542 U.S. at 210. A health-care provider has standing to sue under § 502(a) as an assignee of a participant or beneficiary in order to claim plan benefits. *See Pascack Valley Hosp.*, 388 F.3d at 400 n.7; *Hermann Hosp. v. MEBA Med. & Ben. Plan*, 845 F.2d 1286, 1289 (5th Cir. 1999); *City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 228–29 (1st Cir. 1998).

A health-care provider can assert a claim under § 502(a) if a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan. AITS had an assignment of benefits from N.D. and could have sued under § 502 of ERISA as an assignee. (Docket Entry No. 10, Ex. 1-C). The fact that N.D. assigned his benefits to AITS does not resolve the preemption issue; although a health-care provider's claim cannot be completely preempted if it did not receive an assignment that would give it standing to sue under ERISA, the assignment itself does not result in complete preemption of the hospital's claim.[3] *See*

---

[3] *See Peninsula Reg'l Med. Ctr. v. Mid Atl. Med. Servs., LLC.*, 327 F. Supp. 2d 572, 575, 576 (D. Md. 2004) ("The 'threshold question' presented by [the *Davila*] test is whether the plaintiff has standing to

*Baylor Univ. Med. Ctr. v. Epoch Group, L.C.*, 340 F. Supp. 2d 749, 760 n.9 (N.D. Tex. 2004) ("That [plaintiff] could have sued as an assignee is not dispositive. . . . Given [plaintiff's] independent right of action as a creditor, the court will not recharacterize [it] as an assignee."); *Tenet Healthsystem Hosps., Inc.*, 2005 WL 1038072 at *3 n.3 ("That [plaintiff] may, in fact, have an assignment, is not itself dispositive, if the rights at issue are those provided by a third-party agreement, rather than an ERISA plan."); *see also Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289 n.13 (5th Cir. 1988) (stating that discouraging health-care providers from becoming assignees would "undermine Congress' goal of enhancing employees' health and welfare benefit coverage").

Complete preemption under § 502(a) requires both standing and the lack of an independent legal duty supporting a state-law claim. *Davila*, 542 U.S. at 210. A legal duty is not independent of ERISA if it "derives entirely from the particular rights and obligations established by [ERISA] benefit plans." *Id.*; *see generally Mem'l Hermann Hosp. Sys. v. Great-West Life & Annuity Ins. Co.*, No. Civ. A. H-05-1234, 2005 WL 1562417 (S.D. Tex. June 30, 2005). Each of AITS's causes of action is examined under this test.

---

sue under ERISA's civil enforcement provision. . . . Without the specific assignment of rights by a participant or beneficiary, however, this Court finds no authority to support the proposition that a third-party provider has standing to sue on its own behalf under ERISA."); *Johns Hopkins Hosp. v. Carefirst of Md., Inc.*, 327 F. Supp. 2d 577, 581 (D. Md. 2004) (citing *Davila* for the proposition that "[t]he plaintiff's standing to sue under [§ 502(a)(1)(B)] is . . . an essential requirement in determining whether claims are preempted"); *Tenet Healthsystem Hosps., Inc. v. Crosby Tugs, Inc.*, No. Civ.A. 04-1632, 2005 WL 1038072 at *3 (E.D. La. Apr. 27, 2005) ("Without an assignment of benefits from a 'participant' or 'beneficiary' of an ERISA plan, . . . a third-party health care provider[ ] does not have standing to assert an enforcement claims under [state law].").

### B.     The Breach of Contract Claim

AITS contends that Aetna breached an "independent promise to pay [AITS] for medical services provided to Defendants' insured."  (Docket Entry No. 9, Ex. 1, ¶ V). Defendants respond that AITS has no separate or independent managed-care contract with Aetna.  (Docket Entry No. 10 at 2).  AITS does not dispute this assertion.  The record does not show any such contract.  AITS's purported contract claim is based solely on an agreement by Aetna to pay AITS for the medical services provided to N.D.

Section 502(a)(1)(B) of ERISA allows a Plan participant to sue to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132 [ERISA § 502](a)(1)(B).  The contract claim AITS asserts is a claim to recover benefits allegedly due N.D. under the Kroger Plan terms.  *Cf. Gulf S. Med. and Surgical Institute v. Aetna Life Ins. Co.*, 39 F.3d 520, 521–22 (5th Cir. 1994) (reviewing ERISA § 502(a)(1)(B) claim challenging administrator's denial of benefits, including denials based in part on findings that the billed amounts exceeded the "regional estimate of the reasonable and customary charges" for the services); *Cathey v. Dow Chem. Co. Med. Care Program*, 907 F.2d 554, 560–61 & n.7 (5th Cir. 1990) (same).

Unlike *Pascack Valley Hospital*, in which the insured could not have asserted the breach of contract claims predicated on the managed-care contract, N.D. could have claimed that Aetna improperly denied payment for certain charges as duplicative or not "reasonable and customary."  Aetna denied the payments based on its administration and interpretation

15

of the Kroger Plan.  Unlike the health-care providers in *Pascack Valley Hospital*, 388 F.3d

at 401, the record in this case shows that N.D. assigned his ERISA claims to AITS.  (Docket

Entry No. 10, Ex. 1-C).  Because N.D. assigned his Plan rights to AITS, AITS similarly

could have raised this claim under ERISA.  *See Tango Transport*, 322 F.3d at 891; *see also*

*Cleghorn*, 408 F.3d at 1225 (concluding that a Plan participant's claim for reimbursement

of expenses for emergency medical care could have been brought under ERISA § 502(a)).

The first prong of *Davila,* requiring that "at some point in time, [AITS] could have brought

[its] claim under ERISA § 502(a)(1)(B)," is satisfied.  *Davila*, 542 U.S. at 210.

Resolution of the breach of contract claim requires interpretation of the Kroger ERISA

Plan to determine whether the specific services AITS provided were covered as "eligible

expenses" or not covered because the services exceeded the price of "reasonable and

customary" services or were duplicative of other invoices already submitted and paid.  *Cf.*

*Radiology Assocs. of San Antonio*, 2005 WL 578150 at *7 (determining that interpreting the

pricing agreement between the health-care provider and plan administrator would require

interpreting the ERISA plan, and concluding that the purportedly independent contract was

not "independent" under the second prong of *Davila*).   Because the dispute is not "the

applicable *rate* of payment, which [the plaintiff] maintains is set forth in the [managed-care

contract]" but rather "whether the *services* themselves were usual, customary, reasonable,

medically necessary, or otherwise 'covered' under the [ERISA] Plan," the claim is dependent

on the Plan and completely preempted by ERISA.  *Tenet Healthsystem Hosps., Inc.*, 2005

WL 1038072 at *3 (emphasis in original).  AITS is challenging Aetna's determination that

certain charges were in excess of "reasonable and customary" fees charged, or were duplicative of charges that had already been paid.  Resolving this dispute requires a determination of N.D.'s rights and benefits due under the Kroger ERISA Plan.  The Kroger Plan's obligation to pay for the services AITS provided N.D. depends on, and derives from, the Kroger ERISA Plan terms.  Unlike *Pascack Valley Hospital*, in which a dispute over the extent of coverage could be resolved solely by reference to a managed-care contract independent of the ERISA Plan, resolving the dispute here is possible only by reference to and interpretation of the Kroger ERISA Plan.

Although AITS frames the breach of contract claim as a claim for breach of an independent contract generated with Aetna, that claim depends on whether the charges were covered by the Kroger Plan.  The breach of contract issue does not merely implicate the Kroger Plan; rather, whether Aetna breached the purportedly independent contract wholly depends on the Kroger Plan's "Generally Excluded Charges" and "Eligible Charges" provisions.  (*See* Docket Entry No. 10, Ex. 1-B at 31, 42).  AITS's breach of contract claim does not enforce an independent legal duty.  The claim is preempted.

This court would reach the same conclusion about the breach of contract claim applying pre-*Davila* Fifth Circuit law.  In *Transitional Hospitals Corp. v. Blue Cross and Blue Shield of Texas*, 164 F.3d 952 (5th Cir. 1999), the court explained that the complete preemption analysis "requires, when there is some coverage, that the court take the next analytical step and determine whether the claim in question is dependent on, and derived from the rights of the plan beneficiaries to recover benefits under the terms of the plan." *Id.*

17

at 955 (citing *Cypress Fairbanks Med. Ctr., Inc. v. Pan-Am. Life Ins. Co.*, 110 F.3d 280, 284

(5th Cir. 1997)); *Lordmann Ents., Inc. v. Equicor, Inc.*, 32 F.3d 1529 (11th Cir. 1994)).

*Davila* discusses the source of duties breached when a managed-care entity is making a

coverage determination that depends on plan terms.  There is no question that N.D. had

"some coverage" under the Kroger Plan—Aetna paid over $100,000 to AITS for N.D.'s

claims.  The record shows that the disputed charges center on Aetna's administration of the

Kroger Plan's "reasonable and customary" and "duplicative" charge terms.  Resolution of

this inquiry implicates the rights of plan beneficiaries like N.D. to recover benefits under the

terms of the Kroger Plan.  The breach of contract claim is completely preempted, giving this

court federal removal jurisdiction over the claim and supplemental jurisdiction over all

remaining claims.

### D.    The Remaining Claims

AITS asserts claims for common-law misrepresentation and promissory estoppel,

alleging that the defendants represented through precertification that N.D. was covered by

the insurance policy and that the defendants would pay for the services AITS provided to

N.D.  (Docket Entry No. 9, Ex. 1, ¶¶ VI–VII).  Although this court has supplemental

jurisdiction over the remaining claims, it is appropriate to note that the label affixed to those

claims does not determine whether they could independently provide a basis for removal

jurisdiction.  As the court stated in *Davila*,  whether a claim is labeled as a contract claim or

a tort claim does not determine whether it is preempted.  *See Davila*, 542 U.S. at 215

("[D]istinguishing between pre-empted and non-pre-empted claims based on the particular

18

label affixed to them would 'elevate form over substance and allow parties to evade' the pre-emptive scope of ERISA simply 'by relabeling their contract claims as claims for tortious breach of contract.' ").

Aetna argues that *Mayeaux v. Louisiana Health Service and Indemnity Co.*, 376 F.3d 420 (5th Cir. 2004), held that state-law claims for negligence and unfair trade practices, challenging the handling, review, and disposition of a request for coverage, are preempted by ERISA.  (Docket Entry No. 10 at 19) (citing *Mayeaux*, 376 F.3d at 432).  The Fifth Circuit held that such claims were subject to conflict preemption, not complete preemption. Conflict preemption under ERISA section 514 exists when state-law claims are asserted that "relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."  29 U.S.C. § 1144(a).  A state-law claim may "relate to" a benefit plan even if the state law is not specifically designed to affect such plans and the effect is only indirect.  *See Ingersoll-Rand Co.,* 498 U.S. at 139 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987)).  "Unlike the scope of § 502(a)(1)(B), which is jurisdictional and creates a basis for removal to federal court, § 514(a) . . . governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court."  *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 277 (3d Cir. 2001) (internal quotations omitted)).  Conflict preemption is an affirmative defense; it does not form an independent basis for federal jurisdiction.  *See Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (en banc) ("[O]nly complete preemption of a claim under ERISA § 502(a) is required for removal jurisdiction; conflict preemption under ERISA § 514 is not

19

required; and we overrule the relevant portions of our precedent to the contrary."). Aetna's conflict preemption argument does not provide an independent basis for removal jurisdiction.

## IV.    Conclusion

The motion to remand is denied.[4]  AITS has until June 30, 2006 to file any amended complaint asserting ERISA claims.

SIGNED on June 13, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

---

[4]  Because Aetna has demonstrated that at least one of AITS's claims is completely preempted by ERISA, this court need not address Aetna's alternative argument that diversity jurisdiction exists.