**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| AMBULATORY INFUSION THERAPY | § | |
| SPECIALISTS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-4389 |
| | § | |
| AETNA LIFE INSURANCE COMPANY | § | |
| and PRUDENTIAL INSURANCE CO., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Ambulatory Infusion Therapy Specialists, Inc. ("AITS"), an at-home infusion treatment provider, sued Aetna Life Insurance Company and Prudential Insurance Company of America in Texas state court, alleging a right to recover the amounts billed for medical services provided to a patient. The patient, N.D., worked for The Kroger Company, which funded an employee health insurance plan (the "Plan"). Prudential provided third-party claims administrative services to the Plan until 1999, when Aetna began providing those services.

Beginning in late 2000, AITS provided medical services to N.D. and submitted claims to Aetna for payment for those services under the Plan. Aetna paid most of the amounts invoiced but denied payment on approximately 15% to 20% of the submitted charges on the grounds that they were duplicative or exceeded the reasonable and customary fees for the services.

AITS sued Aetna and Prudential in Texas state court, asserting state-law claims for breach of contract, negligent misrepresentation, and promissory estoppel. (Docket Entry No. 9, Ex. 1, ¶¶ V–VII).  The defendants removed on the grounds that ERISA completely preempted AITS's claims and that this court had diversity jurisdiction.  This court denied AITS's motion to remand by Memorandum and Order issued in June 2006, finding that the breach of contract claim was completely preempted.  This court ordered AITS to replead if it intended to assert an ERISA claim.  AITS did replead but asserted no ERISA claim. Instead, AITS reasserted the same state-law breach of contract, negligent misrepresentation, and promissory estoppel causes of action. (Docket Entry No. 15).  Aetna and Prudential filed a motion to dismiss on the basis that ERISA preemption barred all AITS's state-law claims. (Docket Entry No. 18).  AITS responded, arguing that none of its claims were preempted. (Docket Entry No. 19).  AITS also moved for leave to file a second amended complaint to add a state-law fraudulent misrepresentation claim.  (Docket Entry No. 20).

In its Memorandum and Order of August 29, 2006, this court denied AITS's motion for leave to amend to add the fraud claim, dismissed the breach of contract claim on the basis of complete ERISA preemption, converted the defendants' motion to dismiss the remaining negligent misrepresentation and promissory estoppel claims into one for summary judgment, and set a schedule for discovery tailored to resolving the summary judgment motion.  The parties have completed that discovery.

Aetna and Prudential have moved for summary judgment on AITS's negligent misrepresentation and promissory estoppel claims.  (Docket Entry No. 29).  AITS has

responded, (Docket Entry No. 32), and the defendants have replied, (Docket Entry No. 33). Based on the motion, the response and reply, the pleadings, the record, and the applicable law, this court grants the defendants' motion for summary judgment. The reasons for this decision are explained below.

## I.    Background

This court has detailed the background of this case in previous opinions. Briefly, N.D. worked for The Kroger Company and received health insurance coverage through Kroger's self-funded medical insurance plan. Prudential provided third-party claims administrative services until 1999, when Aetna acquired Prudential's healthcare business. Prudential assigned Aetna its rights and responsibilities under the administrative services agreement with Kroger. (Docket Entry No. 30, Ex. 1). Aetna provided third-party claims administrative services for the Kroger Plan on behalf of Prudential from August 1999 until January 2002, when the administrative services agreement expired. (*Id.*).

From late 2000 through early 2001, N.D. received medical services from AITS. N.D. assigned her Plan benefits for the medical services to AITS. (Docket Entry No. 30, Ex. 1; Ex. 1-C). Neither Aetna nor Prudential had a provider agreement or other contract with AITS for medical services provided to the Kroger Plan participants or beneficiaries. (Docket Entry No. 30, Ex. 1). AITS billed Aetna for the medical services provided to N.D. from October 10, 2000 through January 11, 2001. Aetna paid most, but not all, of the amounts billed. There is no dispute that the Kroger Plan is governed by ERISA.

The Kroger Plan states that "Eligible Charges do not include charges for services or

3

supplies that are not needed or not appropriately provided." (Docket Entry No. 10, Ex. 1-B at 31). The Plan summary includes this limit on coverage. The Plan summary also includes a list of "Generally Excluded Charges." (*Id.* at 40–45). Among the excluded charges is any "Charge Above the Usual Charge" or "Charge Above the Prevailing Charge." (*Id.* at 42). A "Charge Above the Usual Charge" is defined as "[a] charge for a service or supply to the extent that it is above the usual charge made by the provider for the service or supply when there is no coverage." (*Id.*). A "Charge Above the Prevailing Charge" is defined as "[a] charge for a service or supply to the extent that it is above the prevailing charge in the area for a like service or supply. A charge is above the prevailing charge to the extent that it is above the range of charges generally made in the area for a like service or supply. The area and that range are as determined by [Aetna]." (*Id.*).

On June 22, 2005, Aetna sent AITS's counsel a letter explaining why $14,153.67 of the $114,694.50 billed had been denied.[1] (Docket Entry No. 10, Ex. 1-D). An attached spreadsheet listed eleven entries for medical services and showed for each service the date it was provided, the amount billed, the amount paid, the date processed, the amount denied, the reason for the denial, and the applicable copayment or deductible for each service. (*Id.*).

---

[1] Aetna submitted this letter as an exhibit to its motion to dismiss. (Docket Entry No. 10, Ex. 1-D). There is a dispute as to the precise amount of the unpaid amounts. The letter stated that according to Aetna's records, AITS billed Aetna $114,694.50 between October 10, 2000 and January 11, 2001 for services it provided to N.D. Aetna's records indicate that it paid $98,490.83 of the billed amount and denied payment as to $14,153.67. (*Id.*). In its response to defendants' interrogatory number 5, AITS states that it billed Aetna $142,387.10 for services provided to N.D. between October 10, 2000 and January 11, 2001 and that Aetna paid $119,305.73 and refused to pay $23,081.37. (Docket Entry No. 30, Ex. 2). Aetna disputes AITS's figures in its summary judgment motion. (Docket Entry No. 30 at 3 n.7). As explained below, because this court grants summary judgment on the issue of whether any amount is owing on the basis AITS asserts, the dispute as to the amount is not material.

The spreadsheet provided the specific amounts (totaling $14,153.67) for which Aetna had denied payment. As to three of the charges, the "denied reason" was "duplicate charge." The other three charges, the bulk of the $14,153.67, listed "over reasonable and customary fees" as the "denied reason." (*Id.*).

AITS sued Aetna and Prudential in Texas state court to recover the unpaid part of the billed amounts and attorney's fees. After removal and an amendment of the complaint, AITS alleges that the defendants "made an independent promise to pay [AITS] for the services rendered to Defendants' insured and became bound to pay [AITS] for those designated services, which were reasonable and customary for such services. Further, in reliance on Defendants' representations, [AITS] provided treatment to Defendants' insured to the detriment of [AITS]. Defendants have refused to pay for said services." (Docket Entry No. 16, ¶¶ 9–11). AITS asserts that the defendants are estopped from refusing to pay. AITS also asserts a cause of action for negligent misrepresentation, alleging that the "Defendants represented that their insured was covered by their insurance policy and that the Defendants would pay for the services provided to their insured by Plaintiff. This was an untrue statement of fact, as Defendants have since refused to pay for the services rendered to their insured." (*Id.*, ¶¶ 26–27).

The defendants attach several exhibits to their summary judgment motion, including the transcript of the deposition of AITS's corporate representative, Connie Hudec. (Docket Entry No. 30, Ex. 3). Hudec worked as AITS's Vice-President from 1994 until she was promoted to Chief Executive Officer several years later. (*Id.* at 8:5–21). Hudec testified that

5

she had at least ten years of experience dealing with insurance companies on a daily basis to verify coverage for AITS patients.  (*Id.* at 10:25–11:3).  According to Hudec, AITS would call its patients' insurance companies before administering treatment to verify coverage.  (*Id.* at 13:4–9).  This process of pretreatment coverage verification is common in the healthcare industry.  Consistent with this practice, on October 9, 2000, Hudec contacted Prudential Plus and spoke to "Nancy."[2]  (*Id.* at 20:1–21:25).  Hudec filled out an "Insurance Verification" form based on the information she received in her telephone conversation with Nancy.  (*Id.* at 19:19–20:10; 23:5–9; Docket Entry No. 30, Ex. 3-A).  The form stated that the Kroger Plan insuring N.D. would provide coverage before the copayment and deductible were met for 70% of services it determined to be out-of-network and would cover 100% of those charges once the copayment and deductible had been met.  The verification form also stated that the Plan provided a lifetime maximum of $1,000,000, that N.D. would have to pay up to $3,000 in out-of-pocket expenses, and that the Plan had a $200 major-medical deductible.  (Docket Entry No. 30, Ex. 3-A).  Hudec testified that as a result of her work in the healthcare industry and her dealings with insurance companies, she understood that unless the parties otherwise agreed, AITS would be paid what the insurer determined to be reasonable and customary charges for the services provided.  (Docket Entry No. 30, Ex. 3 at 46:24–47:13).

Hudec testified that she did not know of any misrepresentations or false statements

---

[2]  It is unclear why Hudec contacted Prudential rather than Aetna for pretreatment coverage verification in October 2000.  Aetna provided claims administrative services for the Kroger Plan beginning August 6, 1999.  (Docket Entry No. 30, Ex. 1).

about N.D.'s coverage or benefits made during the verification telephone call with Nancy. (*Id.* at 25:14–19; 26:3–6; 43:15–21).  Hudec also testified that this telephone call was the only conversation between AITS and Prudential or Aetna about N.D.'s Plan coverage.  (*Id.* at 26:11–17).  Based on her telephone call with Nancy on October 9, 2000, Hudec believed that AITS would be paid for the services it provided to N.D. under the Plan.  (*Id.* at 57:18–58:3).  Hudec testified that Nancy said that N.D. had out-of-network coverage under the Plan, which Hudec took to mean that "my claims would be paid."  (*Id.* at 59:19).  Hudec agreed that the telephone call to Prudential verified that N.D. was covered by the Plan terms for the services sought, but did not "actually pre-verify that [AITS] would receive payment." (*Id.* at 87:23–24).

In Hudec's deposition, counsel for the defendants asked about each claim AITS submitted to Aetna that was denied or paid only in part.  As to each claim, Hudec responded as follows:

> Q:    Okay.  The next page numbered—the second page, which is 46 of Exhibit 6, reflects that certain charges were paid and certain charges were denied, correct?
>
> A:    Yes.
>
> Q:    When Ambulatory Infusion received this explanation of payment, did it believe that Prudential owed it for these charges that were denied?
>
> A:    Yes.
>
> Q:    And why did it think Prudential owed that money?

A:     Because we had provided the drugs to the patient and paid for them.

Q:     Okay.  So the only reason that Ambulatory Infusion thinks that these two charges here on Page 46 should have been paid is because they provided the services?

A:     Yes.

Q:     Okay.  And you agreed with me earlier, did you not, Connie, that health plans paid only for covered services, correct?

A:     Yes.

Q:     So do you believe these charges were covered?

A:     Yes.

Q:     So your complaint is in this lawsuit that Prudential did not pay covered charges, correct?

A:     Yes.

(Docket Entry No. 30, Ex. 3 at 29:5–30:6).[3]

Hudec testified that she agreed with the following statement of AITS's claim for relief

in this case:  "So at the end of the day Ambulatory Infusion contends that it should be paid

these claims because Prudential improperly denied covered charges."  (*Id.* at 43:22–25).

Hudec testified that she knew covered charges were being improperly denied "[b]ecause

[Aetna] would pay one claim 100 percent, then the following claim of the same amount they

wouldn't pay.  If it was paid once, it should be paid the second time."  (*Id.* at 70:17–20).

---

[3]  Hudec provided similar responses to each question about each denied and partially paid claim. (Docket Entry No. 30, Ex. 3 at 30:21–43:2).

Hudec testified that neither Nancy nor any other representative of the defendants told her that the full amount of every bill for services provided would be paid. Instead, Hudec received information that N.D. was covered by the Plan and what the Plan paid for out-of-network services provided.

The defendants also submitted the affidavit of one of Aetna's claims analysts, Rene Smith, that included a summary of the claims AITS submitted between October 10, 2000 and January 11, 2001 for medical services provided to N.D. and the reasons Aetna declined to pay some of the amounts. (Docket Entry No. 30, Ex. 4). The summary shows Aetna's first claims processing document was dated December 14, 2000 for services AITS provided N.D. on October 10, 2000. (*Id.*). The defendants also submitted copies of the claims processing documents with the explanation of benefits provided to AITS in 2000 and 2001. (Docket Entry No. 30, Ex. 4-A). The documents show that Aetna first processed an AITS claim on December 8, 2000 for services provided to N.D. on November 8, 2000. (*Id.* at AITS 00045).

The evidence shows that Aetna processed each AITS claim and sent the payment to AITS the following business day, with an explanation of the amounts paid. The evidence shows that Aetna processed the claims beginning on December 8, 2000 (for services provided on November 8, 2000) and continued to process claims and mail checks with explanations of benefits during January, February, May, July, and September 2001. Aetna first refused to pay part of the amount claimed on December 8, 2000. (Docket Entry No. 30, Ex. 4-A). Aetna mailed the final check and explanation of benefits on September 11, 2001. AITS filed this suit in state court on October 14, 2005. (Docket Entry No. 1, Ex. B). Aetna

denied sixteen charges because they were "duplicative of other charges for same services," nine charges because they "exceed usual and prevailing charges for services or supplies," and one charge that was "for services or supplies that are not normally part of the procedure being performed." (Docket Entry No. 30, Ex. 4).

The defendants assert that the state-law claims for negligent misrepresentation and promissory estoppel are barred by limitations and that the claims are subject to ERISA preemption because they are no more than a collateral attack on the defendants' coverage determinations. AITS responds to each of these grounds, which are analyzed below.

## II.   The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element or claim. *Celotex*, 477 U.S. at 330. The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the

nonmovant's case. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 304 (5th Cir. 2004).  The nonmovant must do more than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002). "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 322).

11

### III.   Analysis

#### A.   Limitations

The defendants contend that the state-law claims for negligent misrepresentation and promissory estoppel are barred by limitations.  The defendants argue that the alleged misrepresentations occurred when AITS contacted Prudential Plus to verify coverage before providing medical services to N.D. on October 10, 2000.  The defendants also argue that AITS knew that it would not receive full payment of every bill by December 2000, when it received explanations of benefits denying payment for part of the amounts billed.

The limitations period for a negligent misrepresentation claim under Texas law is two years.  *See Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp.*, 20 F.3d 1362, 1371–72 (5th Cir. 1994).  The limitations period for a promissory estoppel claim is four years.  *Hunton v. Guardian Life Ins. Co. of Am.*, 243 F. Supp. 2d 686, 713 n.46 (S.D. Tex. 2002) (citing Texas's residual limitations statute, TEX. CIV. PRAC. & REM. CODE § 16.051), *aff'd*, 71 F. App'x 441 (5th Cir. 2003).  Whether limitations begins to run from the date of the alleged misrepresentation (October 9, 2000) or when the explanations of benefits were issued denying some of the claimed amounts (beginning December 8, 2000 and ending September 11, 2001), limitations has expired.[4]  AITS knew by December 2000 that the defendants were not paying the "full-billed charges" on every claim.  The last claim was processed by September 11, 2001.  This lawsuit was not filed until October 14, 2005.

---

[4]  The defendants note that there is an explanation of benefits dated October 19, 2001, but that this was for a claim originally processed and denied on February 14, 2001.  (Docket Entry No. 30, Ex. 4).

In response, AITS does not argue that its negligent misrepresentation claim was timely filed. It does contend that the promissory estoppel claim was timely, arguing that limitations did not begin to run until AITS received a "final denial of payment," that is, when AITS decided not to pursue further collection efforts on the unpaid claim amounts. (Docket Entry No. 32 at 6). AITS asserts that Aetna denied its last collection demand on June 27, 2002, making the October 14, 2005 lawsuit timely.

Texas law is clear, however, that limitations is not triggered when the last collection effort has been exhausted, but rather when the defendant denies a claim that it had allegedly promised to pay. *Hunton*, 243 F. Supp. 2d at 713 n.46 (stating that under Texas's "legal injury" rule, the latest a cause of action for promissory estoppel could accrue is when the promisor breaches the promise). The state-law claims AITS asserts are barred by limitations.

**B.   ERISA Preemption**

The defendants also base their summary judgment motion on conflict preemption under section 514(a) of ERISA, 29 U.S.C. § 1144(a). This section states:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a). Section 514 creates a "conflict preemption" defense if a plaintiff seeks relief under a state law that relates to an ERISA plan. The Supreme Court has held that a state law "relates to an ERISA plan 'if it has a connection with or reference to such a plan.'"

13

*Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146 (2001) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)).  A defendant asserting a conflict-preemption defense must prove that:  (1) the claim "addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004); *see also Bank of La. v. Aetna US Healthcare, Inc.*, 468 F.3d 237, 242 (5th Cir. 2006).  Because ERISA conflict preemption is an affirmative defense, the defendants bear the burden of proof on both elements.  *Bank of La.*, 468 F.3d at 242.

The Fifth Circuit has held that ERISA preempts state-law claims, including claims for breach of contract, fraud, or negligent misrepresentation, which have the effect of orally modifying the express terms of an ERISA plan and increasing plan benefits for participants or beneficiaries who claim to have been misled.  *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 243–46 (5th Cir. 1990) (citing *Lee v. E.I. DuPont de Nemours & Co.*, 894 F.2d 755, 758 (5th Cir. 1990)).  ERISA does not preempt state-law claims brought by an independent, third-party healthcare provider (such as AITS) against an insurer for negligently misrepresenting the existence of healthcare coverage.  *See Memorial*, 904 F.2d at 243–46.  But a third-party provider's state-law misrepresentation claims are preempted by ERISA when the provider seeks to recover benefits owed under the plan through an assignment from the beneficiary or participant.  *See Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d

14

1286, 1290 (5th Cir. 1988) (*Hermann I*).

> [T]he difference between *Hermann I* and *Memorial* has nothing
> to do with the bare existence of an ERISA plan.  Rather, the
> proper inquiry is whether the beneficiary under the ERISA plan
> was covered at all by the terms of the health care policy, because
> if the beneficiary was not, the provider of health services acts as
> an independent, third party subject to [the] holding in *Memorial*.

*Cypress Fairbanks Med. Center, Inc. v. Pan-Am. Life Ins. Co.*, 110 F.3d 280, 285 (5th Cir.),

*cert. denied*, 522 U.S. 862 (1997).  If the dispute arises from alleged misrepresentations about

the extent of plan coverage or benefits, a court must "determine whether the claim in

question is dependent on, and derived from the rights of the plan beneficiaries to recover

benefits under the terms of the plan." *Transitional Hosps. Corp. v. Blue Cross & Blue Shield

of Tex., Inc.*, 164 F.3d 952, 955 (5th Cir. 1999).

Both parties rely on the summary judgment evidence as to the October 9, 2000

telephone call between Hudec at AITS and Nancy at Prudential to verify N.D.'s Plan

coverage.  The defendants argue that the undisputed facts show that as a matter of law, AITS

did not receive any information that was inconsistent with the Plan's terms and that AITS is

simply complaining about the denial of some of the amounts claimed.  The defendants argue

that AITS's claims are simply allegations that the defendants should have reached different

coverage decisions as to the denied expenses.  The defendants rely on the Fifth Circuit's

holding in *Mayeaux v. Louisiana Health Service & Indemnity*, 376 F.3d 420 (5th Cir. 2004).

In that case, a doctor performed various procedures to treat a patient's connective-tissue

disease and sought reimbursement for those procedures from the patient's insurer.  The

15

insurance company denied the claims on the basis that the procedures were "experimental" and "investigational." *Mayeaux*, 376 F.3d at 423. The doctor sued, asserting state-law claims for bad faith, fraud, unfair trade practices, intentional interference with contractual relations, and defamation. *Id.* at 424. The insurance company argued that ERISA conflict preemption required dismissal of the state-law claims. The Fifth Circuit agreed, holding that the healthcare provider's state-law claims challenged the handling, review, and disposition of a request for coverage under the ERISA plan and that allowing such a collateral challenge would directly affect the relationship between the plan and its beneficiary, two traditional ERISA entities. *Id.* at 432–33.

AITS responds that it is not asserting claims as N.D.'s assignee and does not claim that the defendants should have made different coverage decisions. AITS argues that it is seeking to recover damages for services that it would not have provided "had it not been for the communications made by Defendants' agents to pay for supplies and services to be provided to N.D." (Docket Entry No. 32 at 7). AITS argues that it would not have provided services to N.D. had it not been for the representations made during the telephone call made to verify coverage.

AITS asserts that the facts of this case are similar to *Memorial* and *Transnational Hospitals*. In *Memorial*, the plaintiff-hospital provided services to a patient insured under an ERISA plan. *Memorial*, 904 F.2d at 238. Before administering treatment, the hospital telephoned the insurance company to verify that the patient's insurance plan covered the services it would provide. The insurance company told the hospital that the patient was

covered for the anticipated treatment.  The hospital, in reliance on this representation, provided services and submitted its claims to the insurance company for payment.  The insurance company denied the claims, retracting its earlier statement and claiming that the patient was not eligible for benefits on the date of hospitalization.  The insurance company asserted that coverage under the plan began on the first day of the month after the employee's 30th day of employment, and that on the date of hospitalization, the employee had only been with the company for 16 days.  *Id.*  When the hospital sued and asserted a claim under the state insurance code,  the district court dismissed finding ERISA preemption.

The appellate court held that the hospital's claims were not preempted by ERISA. The court held that the state insurance code section codified a negligent misrepresentation claim for insurance-related cases and did not address an area of exclusive federal concern. The court also held that the claims were brought by the hospital in its role as a third-party healthcare provider, not as an assignee of benefits under the patient's insurance plan.  The court concluded that the hospital's claims did not "arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage."  *Id.* at 246. "Memorial seeks damages from an insurance company and its alleged agent, claiming that, had it not been for negligent misrepresentations of coverage, Memorial would not have accepted the financial risk of providing medical treatment to [the patient]."  *Id.* at 250.

In *Transitional Hospitals*, the hospital contacted the insurance company to verify the insured's coverage.  The insurance company stated that the ERISA plan would reimburse the hospital for "100% of [the patient's] hospital bills after exhaustion of his Medicare benefits."

17

*Transitional Hosps.*, 164 F.3d at 953.  When the hospital submitted its bills, the insurance company paid only $1,255 of the $494,000 claim on the ground that the hospital was a nonparticipating service provider under the plan.  The Fifth Circuit held that the insurance company's state-law claim was not dependent on or derived from the patient's right to recover under the plan terms, despite the fact that there was some coverage under the plan. Rather, the claim was based on an alleged misrepresentation that the plan would pay for all of the bills submitted after Medicare benefits were deducted.  *Id.* at 955.  The court held that ERISA did not preempt the misrepresentation claim and remanded that claim to the district court.  *Id.*

In this case, it is undisputed that N.D. was covered under the terms of the Kroger Plan. *See Memorial*, 904 F.2d at 250.  It is also undisputed that all but approximately 15% to 20% of the claims submitted were paid.  The summary judgment evidence supplied by Hudec, AITS's own witness, shows that when she telephoned Prudential to verify Plan coverage for providing the anticipated services to N.D., Prudential's representative accurately stated that N.D. was covered under the Plan for covered out-of-network services at 70% before copayments and deductibles were met and 100% thereafter.  Hudec, testified that Prudential's agent did not make any specific promise that the full amount AITS billed for every service would be paid.  Hudec acknowledged that the defendants paid consistent with the promised levels for covered services provided by an out-of-network provider.  When the claims were submitted, Aetna declined to pay approximately 15% or 20% of the total amounts billed after determining that they were duplicative of previously submitted and paid amounts or that they

18

exceeded the reasonable and customary fees for the services provided. There was no allegation or evidence of any misrepresentation that the defendants would pay even if it determined that the expenses were not covered for such standard reasons as being duplicative or exceeding reasonable and customary amounts.

The facts in this case are readily distinguishable from the facts of *Memorial* and *Transnational Hospitals*. In both of those cases, the information the ERISA insurer or administrator gave the third-party healthcare provider before it provided the medical treatment to the insured was different from, and in conflict with, the later denial of payment. *Memorial*, 904 F.2d at 246 (representation of coverage; later denial because there was no coverage); *Transnational Hosps.*, 164 F.3d at 953 (representation that the provider would receive 100% of claims after Medicare; later denial of most of claims because the provider was out-of-network). In this case, by contrast, AITS cannot point to any representation about N.D.'s coverage or benefits, made before it treated N.D., that was contradicted by or different from the defendants' later coverage and benefit decisions. N.D. was covered under the Plan, as represented. The defendants paid at the represented levels for an out-of-network provider. The undisputed summary judgment evidence shows that there was no representation that every charge AITS billed would be paid, even if the charge was determined to be duplicative or excessive, and therefore not covered. The defendants denied certain of the claimed amounts on the ground that they were not covered because they were duplicate charges or excessive charges for the medical services provided.

This claim is similar to *Mayeaux*. In that case, the court held that when a third-party

healthcare provider's state-law cause of action—including a fraud cause of action—is in substance a collateral challenge to the ERISA insurer/administrator's coverage determination, ERISA conflict preemption applies. *Mayeaux*, 376 F.3d at 432–33. Because the undisputed evidence shows no misrepresentation as to coverage or benefits as a matter of law, AITS's complaint simply challenges the decision that certain amounts billed were not covered by the Plan terms. Such a claim is derivative of N.D.'s rights under the Plan and dependent on the Plan terms. Resolution of AITS's claim for wrongfully denied payment requires an inquiry into Plan administration, an area of exclusive federal concern. *See id.* "If a medical practitioner could collaterally challenge a plan's decision not to provide benefits, he would directly affect the relationship between the plan and its beneficiary, two traditional ERISA entities." *Id.* at 433.

AITS has produced no evidence that Aetna made any misrepresentation as to N.D.'s coverage or benefits under the Kroger Plan. The undisputed facts in the summary judgment record establish that, as a matter of law, the state-law estoppel and misrepresentation claims are subject to ERISA conflict preemption. *See Mayeaux*, 376 F.3d at 432–33; *Hermann I*, 845 F.2d at 1290–91.

**IV.    Conclusion**

This court grants the defendants' summary judgment motion as to AITS's negligent

misrepresentation and promissory estoppel claims.   AITS's breach of contract claim was

dismissed with prejudice in this court's August 29, 2006 Memorandum and Order.   Because

all claims have been dismissed, final judgment will be entered by separate order.

SIGNED on January 30, 2007, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

21